# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DEBORAH LYNNE RICKRODE,

        Plaintiff

    v.

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,[1]

        Defendant.

CIVIL ACTION NO. 1:16-CV-00976

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION[2]

This is an action brought under Section 205(g) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Deborah Lynne Rickrode's claims for a period of disability and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is respectfully recommended that the Commissioner's decision be affirmed.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of former Acting Commissioner Carolyn W. Colvin.

[2] All references to the Commissioner's Regulations are to be considered as citing the Regulations in effect on the date the ALJ rendered her decision; December 11, 2015.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On September 26, 2013, Rickrode applied for Social Security Disability Insurance Benefits, alleging disability since November 1, 2012. (Doc. 5-2, at 12). Rickrode's claim was denied on November 21, 2013. (Doc. 5-2, at 12). On January 17, 2014, she requested a hearing before an administrative law judge ("ALJ") pursuant to 20 C.F.R. § 404.929. (Doc. 5-2, at 12). Two hearings were conducted before ALJ Sharon Zanotto, the first on March 18, 2015, and the second November 9, 2015. (Doc. 5-2, at 12). In an opinion dated December 11, 2015, ALJ Zanotto determined that Rickrode was not disabled and therefore was not entitled to disability insurance benefits. (Doc. 5-2, at 12-22).

The ALJ found that Rickrode's date of last insured was December 31, 2015. (Doc. 5-2, at 14). Further, the ALJ determined that Rickrode "has not engaged in substantial gainful activity since November 1, 2012, the alleged onset date." (Doc. 5-2, at 14). The ALJ determined that Rickrode, fifty years old on the alleged onset date,[3] had "the following severe impairments: chronic obstructive pulmonary disease (COPD); edema of the right ankle secondary to overpronation; degenerative disc disease of the cervical spine at C6-7; inflammatory polyarthropathy; bilateral calcaneal spurring of the feet; and mild osteoarthritis of the hands (20 C.F.R. § 404.1520(c))." (Doc. 5-2, at 14). However, the ALJ found that these impairments did not "meet of medically equal[] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), § 404.1525 and § 404.1526)." The ALJ

_____

[3] Defined as a "[p]erson closely approaching advanced age." 20 C.F.R. § 404.1563(d).

determined Rickrode could perform light work[4] with some limitations, could engage in her past relevant work, and was not disabled. (Doc. 5-2, at 17-22).

Rickrode appealed the decision of the ALJ to the Appeals Council, who affirmed the ruling on March 31, 2016. Rickrode filed the instant complaint on May 24, 2016, alleging the ALJ's decision was "erroneous and unfounded." (Doc. 1, at 3). Her complaint was served June 15, 2016, and the Commissioner answered August 1, 2016. (Doc. 4). The parties both filed the relevant briefs and the matter is ripe for review.

II. **STANDARD OF REVIEW**

In order to receive benefits under Title II or Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity[4] that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20

---

[4] As defined in 20 C.F.R. § 404.1567(b).

C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[5] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) ; 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3)(incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere

scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Kunselman is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## III. **DISCUSSION**

Rickrode alleges that the ALJ's finding that she "retained the capacity to perform light work lacks the support of substantial evidence." (Doc. 6, at 16). Rickrode seeks reversal of the Commissioner's decision and remand for further proceedings, or if her RFC does not

demonstrate disability alone, that a hypothetical reflecting her limitations be posed to a vocational expert. (Doc. 6, at 21).

A. THE ALJ'S FINDINGS

In rendering a disability determination, an evaluating ALJ is required to undertake a five-step analysis. 20 C.F.R. § 404.1520(a)(1).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574.

In this case, the ALJ determined Rickrode was not engaged in SGA after the onset date. (Doc. 5-2, at 14). The ALJ noted that Rickrode had earnings from Superstores LLC and Dunkin Donuts, totaling $2,016.00 over 2012 and 2013, but that these earnings did not amount to SGA. (Doc. 5-2, at 14). Neither party challenges this finding.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(ii). If the ALJ determines that a claimant does not have an "impairment or ombination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ determined Rickrode had the following severe impairments: chronic obstructive pulmonary disease (COPD); edema of the right ankle secondary to overpronation; degenerative disc disease of the cervical spine at C6-7; inflammatory polyarthropathy; bilateral calcaneal spurring of the feet; and mild osteoarthritis of the hands. (Doc. 5-2, at 14). She determined these impairments "have caused more than a minimal limitation in the claimant's ability to work since her alleged onset date." (Doc. 5-2, at 14). Further, the ALJ noted Rickrode's non-severe impairments as: left hip bursitis, leg length discrepancy, bilateral carpal tunnel syndrome, varicose veins, hemangioma status post basal cell carcinoma, squamous cell carcinoma surgery, vitamin D deficiency, and tendonitis of the right third finger. (Doc. 5-2, at 15). The ALJ determined these non-severe impairments "have not caused more than a minimal limitation in the claimant's ability to work for the required one year duration since her alleged onset date." (Doc. 5-2, at 15). Neither party challenges these findings.

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimants impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

ALJ Zanotto determined that Rickrode did not meet an enumerated listing, or the medical equivalent thereof. (Doc. 5-2, at 16). In an exhaustive list, the ALJ found that Rickrode did not meet Listings: 1.02A (inability to ambulate effectively); 1.02B (inability to perform fine and gross movements effectively); 1.04 (a disorder of the spine resulting in compromise of a nerve root or the spinal cord); 3.02 (chronic obstructive pulmonary disease, among others); or

7

14.09 (inflammatory arthritis, among others). (Doc. 5-2, at 16-17). Rickrode does not assert the ALJ erred in so finding.

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. In this case, the ALJ determined that Rickrode had the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b)[5] except her standing is limited to 7 hours in an 8-hour workday." (Doc. 5-2, at 17). The ALJ further found Rickrode limited to: walking only four hours in an eight-hour workday; frequent reaching, occasional handling, fingering and feeling with her dominant right upper extremity; and frequent handling, fingering and feeling with her non-dominant left upper extremity. (Doc. 5-2, at 17). The ALJ determined that Rickrode should never climb ladders, ropes or scaffolds, nor ever crawl. (Doc. 5-2, at 17). The ALJ detailed the medical and opinion evidence considered in reaching her conclusions. (Doc. 5-2, at 17).

The ALJ lists the following sources considered in evaluating Rickrode's COPD: CRNP Barbetta Moffat (Doc. 5-9, at 48-57); examining radiologist Dr. Gregory Marrocco; CRNP Jennifer Clark; treating rheumatologist Dr. Luis Toro (Doc. 5-10, at 2-53); and examining radiologist Dr. Jonathan Enterline. The ALJ noted Rickrode initially complained of shortness of breath to Moffat on September 24, 2013, with a chest x-ray date July 2, 2013 from York

--------------------------------

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

Hospital indicating "no acute cardiopulmonary process." (Doc. 5-2, at 18). A CT scan conducted the same day by Dr. Marrocco "revealed mild to moderate centrilobular emphysematous changes." (Doc. 5-2, at 18). CRNP Clark noted on July 31, 2013 that Rickrode used Spiriva in the morning "and was fine the rest of the day," and that Rickrode "has not been using the Venotolin inhaler." (Doc. 5-2, at 18). On December 23, 2013, CRNP Moffat "indicated that pulmonary function tests showed only moderate obstruction." (Doc. 5-2, at 18). At a subsequent visit to Dr. Toro, Rickrode did not complain of shortness of breath. (Doc. 5-2, at 18). Dr. Enterline examined a CT scan of Rickrode's chest on October 30, 2015, finding mild centrilobular emphysema. (Doc. 5-2, at 18). CRNP Moffat notes that Rickrode "has been counselled to stop smoking on multiple occasions" as of October 8, 2013, and on March 3, 2015, Rickrode informed Dr. Toro she continued to smoke on a daily basis. (Doc. 5-2, at 18). The ALJ concluded "there is some question regarding the claimant's compliance in addressing her COPD." (Doc. 5-2, at 18).

Next, the ALJ considered Rickrode's edema of the right ankle secondary to overpronation. (Doc. 5-2, at 18). The ALJ considered the evidence of: treating orthopedist Dr. Samuel D'Agata; CRNP Moffat; and Dr. Toro. (Doc. 5-2, at 18). Dr. D'Agata's treatment notes indicate Rickrode compained of pain and diffuse edema of the right ankle on July 16, 2013. (Doc. 5-2, at 18). Dr. D'Agata observed that Rickrode "is not really having much pain" and continued to work as a dog groomer, "on her feet considerably throughout the day." (Doc. 5-2, at 18). On Septembe 24, 2013, CRNP Moffat stated that Rickrode's ankle swelling was "OK," and on September 23, 2014, Dr. Toro noted that Rickrode's pain "comes and goes." (Doc. 5-2, at 18).

The ALJ also found Rickrode has degenerative disc disease of the cervical spine at C6-7. (Doc. 5-2, at 18). The ALJ reached this conclusion based on the CT scan conducted by Dr. Marracco. (Doc. 5-2, at 18). The CT scan showed moderate degenerative changes involving the C6-7 disc space. (Doc. 5-2, at 18). On June 25, 2013, CRNP Moffat indicated Rickrode "has age appropriate range of motion and strength of the musculoskeletal system. (Doc. 5-2, at 18-19). The ALJ noted there was no evidence of epidural steroid injections or surgeries relating to degenerative disc disease. (Doc. 5-2, at 19).

The ALJ also evaluated Rickrode's multiple joint arthritis. (Doc. 5-2, at 19). In so doing, the ALJ considered evidence from: Dr. Toro; CRNP Moffat; and examining radiologist Dr. Henry Smith. (Doc. 5-2, at 19). Dr. Toro diagnosed Rickrode with inflammatory polyarthropathy. (Doc. 5-2, at 19). CRNP Moffat indicated Rickrode had pain in her wrists, legs and ankles on December 23, 2013, but the ALJ notes that Moffat found "x-rays of various joints have been unremarkable except for degenerative changes in the claimant's hips." (Doc. 5-2, at 19). On November 18, 2014, Dr. Toro stated that Rickrode's daily morning stiffness lasts no more than thirty minutes. (Doc. 5-2, at 19). The same day Dr. Smith stated that x-rays of Rickrode's right hand "showed only mild generalized arthritic changes in the hand and wrist." (Doc. 5-2, at 19). On December 29, 2014, Dr. Toro "indicated that an extractable nuclear panel . . . revealed that the CCP antibody and rheumatoid factor were both negative." (Doc. 5-2, at 19). On March 3, 2015, Dr. Toro noted Rickrode continued to have multiple joint pain, and had a normal gait and station. (Doc. 5-2, at 19).

Next, the ALJ found Rickrode has bilateral calcaneal spurring of the feet. (Doc. 5-2, at 19). This was based x-rays of Rickrode's bilateral ankles taken on May 6, 2014. (Doc. 5-2, at

19). The x-rays did not indicate erosions or abnormal soft tissue calcifications. (Doc. 5-2, at 19). The ALJ noted that Rickrode presented no evidence of surgeries for the condition.

The ALJ also found Rickrode has mild osteoarthritis of the hands, based on x-rays thereof. (Doc. 5-2, at 19). On May 13, 2013, Rickrode stated that she did not have any numbness in her hands and only occasional tingling. (Doc. 5-2, at 19). On May 15, 2013, CRNP Moffat indicated that Rickrode was starting "on a course of prednisone taper for swelling and pain in her hands." (Doc. 5-2, at 19).

In evaluating Rickrode's daily limitations, the ALJ found that Rickrode "has no problems with personal care." (Doc. 5-2, at 19). Rickrode can drive a car and go shopping, and testified that she "does dishes, laundry and vacuuming." (Doc. 5-2, at 19). The ALJ notes that Rickrode disagreed with CRNP Moffat's opinion that Rickrode could only sit one hour in an eight-hour workday, and stand/walk only one hour in an eight-hour workday. (Doc. 5-2, at 19).

Lastly, the ALJ also considered opinion evidence from: non-treating, non-examining medical expert Dr. John Kwock; non-treating, non-examining physician Dr. Michael Brown; Dr. Reinblatt; CRNP Moffat; treating physician Dr. Christopher George; treating physician Dr. Howard Farrington; and examining occupational therapist Jeffrey Weinman. (Doc. 5-2, at 19-20). The ALJ afforded great weight to Dr. Kwock's opinion that Rickrode could perform light work, based on Kwock's expertise in orthopedics; finding the opinion consistent with Ms. Moffat's statement that the claimant has age appropriate range of motion and strength of the musculoskeletal system." (Doc. 5-2, at 19). The ALJ afforded great weight to Dr. Brown's opinion that Rickrode can lift and/or carry 20 pounds occasionally and 10 pounds frequently," finding his opinion supported by the record as a whole and consistent with CRNP Moffat's statement. (Doc. 5-2, at 19-20). The ALJ afforded limited weight to the opinion of Dr. Reinblatt

that Rickrode is unable to work, stating that this opinion was inconsistent with the record, CRNP Moffat's statement, and that such a determination is reserved for the Commissioner. (Doc. 5-2, at 20). The ALJ assigned little weight to the opinions of CRNP Moffat and Dr. George stating that Rickrode is disabled for the same reasons. (Doc. 5-2, at 20). The ALJ also discounted the Multiple Impairment Questionnaire proffered by CRNP Moffat and Dr. George which opined that Rickrode would miss more than three days of work per month; stating the MIQ was not supported by the record as a whole, and was inconsistent with Dr. Enterline's examination of Rickrode's CT scan. (Doc. 5-2, at 20). The ALJ assigned limited weight to CRNP Moffat's Summary Impairment Questionnaire, reflecting the same conclusion. (Doc. 5-2, at 20). Next, the ALJ afforded limited weight to the Arthritis Impairment Questionnaire of Dr. Farrington, in which Dr. Farrington opined that Rickrode could sit only for four hours in an eight-hour workday. (Doc. 5-2, at 20). The ALJ deemed that this conclusion was inconsistent with the record, and contradicted by an ultrasound evaluated by a Dr. Parra, which "showed no evidence for deep vein thrombosis or superficial thrombophlebitis in the bilateral lower extremities." (Doc. 5-2, at 20). Lastly, the ALJ assigned limited weight to the Functional Capacity Evaluation of Jeffrey Weinman, finding Weinman's opinion that Rickrode "is limited to less than a full range of sedentary work" to be unsupported by the record as a whole and inconsistent with CRNP Moffat's statement "that the claimant has age appropriate range of motin and strength of the musculoskeletal system." (Doc. 5-2, at 20).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant

work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

ALJ Zanotto determined that Rickrode retained the capability to perform past relevant work as "an attendant, children's institution," with the caveat that the performance be at the light level as opposed to the medium level generally performed. (Doc. 5-2, at 20). The ALJ determined that this work met the requirements that Rickrode performed the work within the past 15 years, lasted long enough to learn it, and was performed at substantial gainful activity levels. (Doc. 5-2, at 20). Comparing the requirements of this job to Rickrode's RFC, the ALJ determined she retained the ability to perform the work. (Doc. 5-2, at 21).

Finally, despite determining Rickrode has the ability to perform past relevant work, the ALJ nonetheless considered Rickrode's ability to perform alternate work. (Doc. 5-2, at 21). At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

In determining that Rickrode could make an adjustment to other work, the ALJ first considered vocational factors of age, education and work experience. (Doc. 5-2, at 21). The ALJ determined that Rickrode was 50 years old on the alleged onset date, making her an individual closely approaching advanced age per the Regulations. 20 C.F.R. § 404.1563(d). The ALJ determined Rickrode "has at least a high school education and is able to communicate in

English. 20 C.F.R. § 404.1564. (Doc. 5-2, at 21). The ALJ stated that transferability of job skills was immaterial, but that there were "jobs that exist in significant numbers in the national economy that the claimant also can perform." (Doc. 5-2, at 21). Based on the testimony of a vocational expert, the ALJ concluded Rickrode could "perform the requirements of representative occupations such as conveyor line bakery worker, . . . usher, . . . and ticket taker." (Doc. 5-2, at 21).

In summary, the ALJ concluded that Rickrode "has not been under a disability, as defined in the Social Security Act, from November 1, 2012, through the date of this decision" dated December 11, 2015. (Doc. 5-2, at 22).

B. THE ALJ DID NOT ERR IN FINDING THAT THE PLAINTIFF COULD PERFORM LIGHT WORK BASED ON SUBSTANTIAL EVIDENCE

Rickrode alleges a one point of error: that "[t]he ALJ's finding that Plaintiff retained the capacity to perform light work lacks the support of substantial evidence." (Doc. 6, at 16). Rickrode details the rationale for her contention, citing the ALJ's failure to "specify how much Plaintiff could lift and carry in her statement of Plaintiff's residual functional capacity," improper weighing of opinion evidence, improper evaluation of Rickrode's bilateral carpal tunnel syndrome, and failure to account for any limitations attributable to Plaintiff's COPD. (Doc. 6, at 17-20). The Commissioner responds the ALJ's evaluation that Rickrode can perform light work encompasses a finding on Rickrode's ability to lift and carry, and that the ALJ properly evaluated all the medical evidence in the record. (Doc. 7, at 17-25).

As stated above, the ALJ determined Rickrode could perform light work, with limitations in the portion of the day spent standing (seven hours), walking (four hours), or sitting (seven hours), as well as being limited to "frequent" reaching, "occasional" handling,

fingering and feeling with the right extremity, and "frequent" handling, fingering and feeling with her left extremity. (Doc. 5-2, at 17). The ALJ found Rickrode should never climb ladders, ropes or scaffolds, nor crawl. (Doc. 5-2, at 17). The ALJ found no limitations in Rickrode's ability to lift and/or carry. (Doc. 5-2, at 17).

The ability to perform light work without limitations in lifting and carrying "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Thus, a determination by the Commissioner that a claimant can perform light work comes with the expectation of these weight limitations.

The ALJ did not render specific findings of weight limitations beyond those contemplated by the Regulations, but it is apparent from the record that the weight restrictions of light work were contemplated in formulating the opinion. "A question to a vocational expert must reflect '*all* of the claimant's impairments that are supported by the record' to provide substantial evidence." *Durden v. Colvin*, 191 F.Supp.3d 429, 459-60 (M.D. Pa. 2016) (quoting *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005)). Rickrode alleges her ability to lift and carry was inadequately proffered to the vocational expert. (Doc. 6, at 17). As noted by the Commissioner, and contrary to Rickrode's assertion, the hypothetical posed to vocational expert Michael Kibler contemplated the "full range of light work"—save the limitations specifically found and enumerated above—which includes consideration of a claimant's ability to lift and carry within the limits. (Doc. 5-2, at 58-59). As the full range of light work contemplates the lifting and carrying requirements articulated by the Regulations, the Court finds this hypothetical satisfactory.

This conclusion is supported elsewhere in the record. Medical expert Dr. Kwock testified immediately before Kibler that Rickrode could "frequently" lift and carry up to 10 pounds and

"occasionally" lift and carry up to 20 pounds. (Doc. 5-2, at 52). The ALJ afforded great weight to the physical RFC assessment conducted by non-examining source Dr. Michael Brown, who opined that Rickrode could "frequently" lift and carry 10 pounds and occasionally 20 pounds. (Doc. 5-3, at 5). While Dr. Brown did not have the benefit of opinion evidence at the time of this conclusion, his determination is consistent with medical evidence in the record.

However the conclusion that Rickrode can *frequently* meet the exertional requirement of carrying 10 pounds is contradicted elsewhere. On July 29, 2013, occupational therapist Jeffrey Weinman noted that Rickrode could occasionally lift and carry up to 20 pounds, with frequent lifting limited to five pounds, and only occasional carrying of 0-20 pounds. (Doc. 5-9, at 72-73). In a summary inpatient questionnaire dated the same, CRNP Moffat signed off on the same exertional limitations. (Doc. 5-9, at 58). A multiple inpatient questionnaire conducted by CRNP Moffat on January 14, 2014, Moffat repeated findings that Rickrode could occasionally lift 5-20 pounds, occasionally carry 0-20 pounds, and frequently lift up to five pounds. (Doc. 5-9, at 51). At the hearing before the ALJ, Rickrode testified that she believed she could lift up to ten pounds, albeit with uncertainty on the frequency of doing so. (Doc. 5-2, at 37-38).

In affording great weight to the opinions of Dr. Kwock and Dr. Brown, the ALJ found their opinions supported by the record, in both cases noting that CRNP Moffat assessed Rickrode as having "age appropriate range of motion and strength of the musculoskeletal system." (Doc. 5-2, at 19). The ALJ also used this conclusion to discount Weinman's and CRNP Moffat's own opinions as to Rickrode's lifting and carrying limitations. (Doc. 5-2, at 19). This weighing of evidence was not improper.

Neither CRNP Moffat, nor occupational therapist Weinman, are acceptable medical sources, as defined in 20 C.F.R. § 404.416.913(a), whose opinions are given controlling weight.

"The ALJ also may consider other opinions about a claimant's disability from persons who are not deemed an 'acceptable medical source,' such as an occupational therapist." *Taylor v. Astrue*, No. 09-121J, 2010 WL 1372458, at *3 (W.D. Pa. April 5, 2010) (quoting 20 C.F.R. § 416.913(d)). While an opinion from a CRNP or occupational therapist is not an acceptable medical source to establish if a claimant has a medically determinable impairment, once medically determinable impairments are established the opinions of these sources "may be used 'to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work..." *Rivera v. Colvin*, 2016 WL 1720423, at *5 (E.D. Pa. April 29, 2016) (quoting 20 C.F.R. § 404.1513(d)) (alterations in original). Medically determinable impairments established, the opinions of CRNP Moffat and occupational therapist Weinman may be considered in determining the severity of Rickrode's limitations. Unlike in *Rivera*, ALJ Zanotto did not disregard these opinions, instead affording them limited weight.

Non-treating, non-examining sources such as Dr.'s Kwock and Brown may not be given great weight when confronted with contrary evidence from treating physicians; however no treating physicians have offered findings to the contrary. It is clear that the ALJ considered the opinions of CRNP Moffat and occupational therapist Weinman, permissibly choosing to afford weight to other sources. Rickrode asserts that treating physicians Dr. Farrington, Dr. Gilhool, and Dr. Toro offered opinions on Rickrode's grip strength relevant to her ability to carry,[6]

---

[6] These opinions can be found at (Doc. 5-9, at 62), (Doc. 5-10, at 41) and (Doc. 5-10, at 2-27, 29-30, 39-41; Doc. 5-12, at 31-33) respectively.

however none present opinions contradictory to the medical expert testimony on Rickrode's ability to lift and carry.

Multiple medical sources in the record indicate Rickrode's ability to occasionally lift and/or carry up to 20 pounds. Two, albeit non-treating, non-examining sources, offered opinions that Rickrode could perform the full range of the lifting and carrying requirements contemplated by the Regulations. Further, based on the testimony of vocational expert Michael Kibler, the ALJ did not consider Rickrode able to perform certain past relevant work due to the nature of her limitations. (Doc. 5-2, at 59). Thus, the Court finds the argument that the ALJ erred in not specifying Rickrode's lifting and carrying restrictions beyond those contained in the Regulations to be without merit. The ALJ's RFC encompassed the full range of weights contemplated by the Regulations, reflects the hypothetical proffered to a vocational expert, and is consistent with substantial evidence in the record.

Next, Rickrode contends that the ALJ's RFC may have been drafted with a determination that Rickrode's carpal tunnel syndrome was non-severe. (Doc. 6, at 20). Indeed, the ALJ characterized Rickrode's carpal tunnel syndrome as non-severe. (Doc. 5-2, at 15). Rickrode contends that the vocational expert conceded that it was a severe impairment. (Doc. 6, at 20).

In the section of the transcript cited by Rickrode, the ALJ questioned medical expert Dr. Kwock on the severity of Rickrode's carpal tunnel syndrome at the hearing conducted November 9, 2015. (Doc. 5-2, at 49-52). Citing objective medical testing, Dr. Kwock noted that early tests for carpal tunnel syndrome were negative. (Doc. 5-2, at 49). A subsequent test reflected the possibility that Rickrode had carpal tunnel syndrome. (Doc. 5-2, at 49). Dr. Kwock explained that a singular negative or positive test may not be dispositive. (Doc. 5-2, at 49-50).

Dr. Kwock stated the first date that Rickrode was diagnosed with carpal tunnel syndrome was not until January 2015. (Doc. 5-2, at 50). This is 26 months after the alleged onset date. Dr. Kwock did state that Rickrode's carpal tunnel syndrome was "severe enough to impact her work environment." (Doc. 5-2, at 52). However, Dr. Kwock plainly considered the effects in his opinion regarding Rickrode's ability to lift and carry. (Doc. 5-2, at 52). The ALJ considered the limitations discussed in affording weight to Dr. Kwock's opinion. As Rickrode's condition did not manifest until well after the onset date and appears to be fully considered in crafting Rickrode's RFC, the Court finds no harmful error in the ALJ's characterization and subsequent disability determination.

Lastly, Rickrode argues that the ALJ did not account for any limitations attributable to her COPD. (Doc. 6, at 20). Rickrode does not articulate what environmental considerations would be necessary for her to perform the work identified. The ALJ did briefly question vocational expert Michael Kibler on the employability of the claimant should she require breaks for COPD. (Doc. 5-2, at 62). Kibler stated that Rickrode could perform work as a conveyor line bakery worker, usher, or ticket taker. (Doc. 5-2, at 60). In the hypothetical, ALJ Zanotto inquired whether Rickrode would be employable in any of the positions identified if she required additional breaks due to the effects of COPD or emphysema. (Doc. 5-2, at 62). Kibler opined that Rickrode would not be employable if these breaks "occurred outside of customary breaks and on a consistent basis." (Doc. 5-2, at 62). The ALJ nonetheless identified these three occupations as ones that Rickrode could make a successful adjustment to performing, which was not in error. The identification of other work came in considering step five of the sequential analysis process, with the ALJ having already determined that Rickrode was not disabled at step four.

"Residual functional capacity is defined as 'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Mutchler v. Colvin*, 2015 WL 4638145, at *3 (M.D. Pa. July 31, 2015) (quoting *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). "In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Mutchler*, 2015 WL 4638145, at *3 (quoting *Roth v. Colvin*, 2014 WL 4415372, *2 n. 1 (W.D. Pa. Sept. 08, 2014)). While the question asked to Kibler only encompassed other work, it is clear the ALJ considered Rickrode's COPD in reaching her determination that Rickrode could return to past relevant work. The ALJ noted Rickrode complained to CRNP Moffat of shortness of breath on September 24, 2013. (Doc. 5-2, at 18). The ALJ then identified objective medical evidence provided from Dr. Gregory Marrocco and Dr. Jonathan Enterline, both of whom performed CT scans showing mild to moderate centrilobular emphysema. (Doc. 5-2, at 18). The ALJ also cited to CRNP Jennifer Clark's treatment notes reflecting Rickrode's control over her symptoms, even going about her day without the use of an inhaler. (Doc. 5-2, at 18). The ALJ also notes that Rickrode saw Dr. Toro on November 18, 2014, with no complaints about shortness of breath. (Doc. 5-2, at 18). The ALJ also noted that as recently as March 3, 2015, Rickrode continued to indicate daily smoking, with the ALJ opining that "there is some question regarding the claimant's compliance in addressing her COPD." (Doc. 5-2, at 18).

The ALJ clearly evaluated the extent that Rickrode's COPD limits her ability to work. There is substantial medical evidence in the record that the effects of the disease do manifest in a way precluding her from work, including control over the effects, and no need for medicinal intervention outside of taking a Spiriva in the morning. (Doc. 5-2, at 18). Thus, while the ALJ

did not ask the vocational expert if the effects of COPD would preclude Rickrode from returning to past relevant work, the ALJ nonetheless considered the evidence of Rickrode's COPD in crafting the RFC at issue. Accordingly, the Court finds no error in the ALJ's evaluation.

## IV. SUMMARY

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). Having reviewed the submissions of the parties, the Court finds that the decision of the ALJ is not in error. The Court recommends a finding that the decision of the ALJ that Rickrode can perform light work, with the prescribed limitations, is supported by substantial evidence, considers the lifting and carrying limitations necessary in such work, and accounts for the limitations occurring as a result of Rickrode's identifiable medical impairments.

## V. RECOMMENDATION

Based on the foregoing, it is recommended that the Commissioner's decision be **AFFIRMED**.

Dated: August 11, 2017

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DEBORAH LYNN RICKRODE,

           Plaintiff,

    v.

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

           Defendant.

CIVIL ACTION NO. 1:16-CV-00976

(CONNER, C.J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 11, 2017**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 11, 2017**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**